Chief Justice Roberts
delivered the opinion of the Court.
The Double Jeopardy Clause protects against being tried twice for the same offense. The Clause does not, however, bar a second trial if the first ended in a mistrial. Before the jury concluded deliberations in this case, it reported that it was unanimous against guilt on charges of capital murder and first-degree murder, was deadlocked on manslaughter, and had not voted on negligent homicide. The court told the jury to continue to deliberate. The jury did so but still could not reach a verdict, and the court declared a mistrial. All agree that the defendant may be retried on charges of manslaughter and negligent homicide. The question is whether he may also be retried on charges of capital and first-degree murder.
*602 H-1
One-year-old Matthew McFadden, Jr., suffered a severe head injury on November 28, 2007, while home with his mother’s boyfriend, Alex Blueford. Despite treatment at a hospital, McFadden died a few days later.
The State of Arkansas charged Blueford with capital murder, but waived the death penalty. The State’s theory at trial was that Blueford had injured McFadden intentionally, causing the boy’s death “[u]nder circumstances manifesting extreme indifference to the value of human life.” Ark. Code Ann. § 5-10-101(a)(9)(A) (Supp. 2011). The defense, in contrast, portrayed the death as the result of Blueford accidentally knocking McFadden onto the ground.
The trial court instructed the jury that the charge of capital murder included three lesser offenses: first-degree murder, manslaughter, and negligent homicide. In addition to describing these offenses, the court addressed the order in which the jury was to consider them: “If you have a reasonable doubt of the defendant’s guilt on the charge of capital murder, you will consider the charge of murder in the first degree.... If you have a reasonable doubt of the defendant’s guilt on the charge of murder in the first degree, you will then consider the charge of manslaughter. ... If you have a reasonable doubt of the defendant’s guilt on the charge of manslaughter, you will then consider the charge of negligent homicide.” . App. 51-52.
The prosecution commented on these instructions in its closing argument. It told the jury, for example, that “before you can consider a lesser included of capital murder, you must first, all 12, vote that this man is not guilty of capital murder.” Id., at 55. The prosecution explained that this was “not a situation where you just lay everything out here and say, well, we have four choices. Which one does it fit the most?” Id., at 59. Rather, the prosecution emphasized, “unless all 12 of you agree that this man’s actions were not *603 consistent with capital murder, then and only then would you go down to murder in the first degree.” Ibid.
After the parties concluded their arguments, the court presented the jury with a set of five verdict forms, each representing a possible verdict. There were four separate forms allowing the jury to convict on each of the charged offenses: capital murder, first-degree murder, manslaughter, and negligent homicide. A fifth form allowed the jury to return a verdict of acquittal, if the jury found Blueford not guilty of any offense. There was no form allowing the jury to acquit on some offenses but not others. As stated in the court’s instructions, the jury could either “find the defendant guilty of one of these offenses” or “acquit him outright.” Id., at 51. Any verdict — whether to convict on one or to acquit on all — had to be unanimous.
A few hours after beginning its deliberations, the jury sent the court a note asking “what happens if we cannot agree on a charge at all.” Id., at 62. The court called the jury back into the courtroom and issued a so-called “Allen instruction,” emphasizing the importance of reaching a verdict. See Allen v. United States, 164 U. S. 492, 501-502 (1896). The jury then deliberated for a half hour more before sending out a second note, stating that it “cannot agree on any one charge in this case.” App. 64. When the court summoned the jury again, the jury foreperson reported that the jury was “hopelessly” deadlocked. Ibid. The court asked the foreperson to disclose the jury’s votes on each offense:
“THE COURT: All right. If you have your numbers together, and I don’t want names, but if you have your numbers I would like to know what your count was on capital murder.
“JUROR NUMBER ONE: That was unanimous against that. No.
“THE COURT: Okay, on murder in the first degree?
“JUROR NUMBER ONE: That was unanimous, against that.
*604 “THE COURT: Okay. Manslaughter?
“JUROR NUMBER ONE: Nine for, three against.
“THE COURT: Okay. And negligent homicide?
“JUROR NUMBER ONE: We did not vote on that, sir.
“THE COURT: Did not vote on that.
“JUROR NUMBER ONE: No, sir. We couldn’t get past the manslaughter. Were we supposed to go past that? I thought we were supposed to go one at a time.” Id., at 64-65.
Following this exchange, the court gave another Allen instruction and sent the jurors back to the jury room. After deliberations resumed, Blueford’s counsel asked the court to submit new verdict forms to the jurors, to be completed “for those counts that they have reached a verdict on.” Id., at 67. The prosecution objected on the grounds that the jury was “still deliberating” and that a verdict of acquittal had to be “all or nothing.” Id., at 68. The court denied Blueford’s request. To allow for a partial verdict, the court explained, would be “like changing horses in the middle of the stream,” given that the jury had already received instructions and verdict forms. Ibid. The court informed counsel that it would declare a mistrial “if the jury doesn’t make a decision.” Id., at 69.
When the jury returned a half hour later, the foreperson stated that they had not reached a verdict. The court declared a mistrial and discharged the jury.
The State subsequently sought to retry Blueford. He moved to dismiss the capital and first-degree murder charges on double jeopardy grounds, citing the foreperson’s report that the jurors had voted unanimously against guilt on those offenses. The trial court denied the motion, and the Supreme Court of Arkansas affirmed on interlocutory appeal. According to the State Supreme Court, the foreperson’s report had no effect on the State’s ability to retry Blueford, because the foreperson “was not making a formal announce *605 ment of acquittal” when she disclosed the jury’s votes. 2011 Ark. 8, p. 9, 370 S. W. 3d 496, 601. This was not a case, the court observed, “where a formal verdict was announced or entered of record.” Ibid. The court added that the trial .court did not err in denying Blueford’s request for new verdict forms that would have allowed the jury to render a partial verdict on the charges of capital and first-degree murder.
Blueford sought review in this Court, and we granted cer-tiorari. 565 U. S. 941 (2011).
II
The Double Jeopardy Clause provides that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb.” U. S. Const., Arndt. 5. The Clause “guarantees that the State shall not be permitted to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.” United States v. Martin Linen Supply Co., 430 U. S. 564, 569 (1977) (internal quotation marks omitted).
Blueford contends that the foreperson’s report means that he cannot be tried again on charges of capital and first-degree murder. According to Blueford, the Double Jeopardy Clause prohibits a second trial on those charges, for two reasons.
A
Blueford’s primary submission is that he cannot be retried for capital and first-degree murder because the jury actually acquitted him of those offenses. See Green v. United States, 355 U. S. 184, 188 (1957). The Arkansas Supreme Court noted — and Blueford acknowledges — that no formal judgment of acquittal was entered in his case. But none was necessary, Blueford maintains, because an acquittal is a matter of substance, not form. Quoting from our decision in *606 Martin Linen, supra, at 571, Blueford contends that despite the absence of a formal verdict, a jury’s announcement constitutes an acquittal if it “ 'actually represents a resolution ... of some or all of the factual elements of the offense charged.’ ” Brief for Petitioner 21. Here, according to Blueford, the foreperson’s announcement of the jury’s unanimous votes on capital and first-degree murder represented just that: a resolution of some or all of the elements of those offenses in Blueford’s favor.
We disagree. The foreperson’s report was not a final resolution of anything. When the foreperson told the court how the jury had voted on each offense, the jury’s deliberations had not yet concluded. The jurors in fact went back to the jury room to deliberate further, even after the foreperson had delivered her report. When they emerged a half hour later, the foreperson stated only that they were unable to reach a verdict. She gave no indication whether it was still the case that all 12 jurors believed Blueford was not guilty of capital or first-degree murder, that 9 of them believed he was guilty of manslaughter, or that a vote had not been taken on negligent homicide. The fact that deliberations continued after the report deprives that report of the finality necessary to constitute an acquittal on the murder offenses.
Blueford maintains, however, that any possibility that the jurors revisited the murder offenses was foreclosed by the instructions given to the jury. Those instructions, he contends, not only required the jury to consider the offenses in order, from greater to lesser, but also prevented it from transitioning from one offense to the next without unanimously — and definitively — resolving the greater offense in his favor. “A jury is presumed to follow its instructions.” Weeks v. Angelone, 528 U. S. 225, 234 (2000). So, Blueford says, the foreperson’s report that the jury was deadlocked on manslaughter necessarily establishes that the jury had acquitted Blueford of the greater offenses of capital and first-degree murder.
*607 But even if we assume that the instructions required a unanimous vote before the jury could consider a lesser offense — as the State assumes for purposes of this case, see Brief for Respondent 25, n. 3 — nothing in the instructions prohibited the jury from reconsidering such a vote. The instructions said simply, “If you have a reasonable doubt of the defendant’s guilt on the charge of [the greater offense], you will [then] consider the charge of [the lesser offense].” App. 51-52. The jurors were never told that once they had a reasonable doubt, they could not rethink the issue. The jury was free to reconsider a greater offense, even after considering a lesser one.[1]
A simple example illustrates the point. A jury enters the jury room, having just been given these instructions. The foreperson decides that it would make sense to determine the extent of the jurors’ agreement before discussions begin. Accordingly, she conducts a vote on capital murder, and everyone votes against guilt. She does the same for first-degree murder, and again, everyone votes against guilt. She then calls for a vote on manslaughter, and there is disagreement. Only then do the jurors engage in a discussion about the circumstances of the crime. While considering the arguments of the other jurors on how the death was caused, one of the jurors starts rethinking his own stance on a greater offense. After reflecting on the evidence, he comes to believe that the defendant did knowingly cause the death — satisfying the definition of first-degree murder. At *608 that point, nothing in the instructions prohibits the jury from doing what juries often do: revisit a prior vote. “The very object of the jury system,” after all, “is to secure unanimity by a comparison of views, and by arguments among the jurors themselves.” Allen, 164 U. S., at 501. A single juror’s change of mind is all it takes to require the jury to reconsider a greater offense.
It was therefore possible for Blueford’s jury to revisit the offenses of capital and first-degree murder, notwithstanding its earlier votes. And because of that possibility, the foreperson’s report prior to the end of deliberations lacked the finality necessary to amount to an acquittal on those offenses, quite apart from any requirement that a formal verdict be returned or judgment entered.
That same lack of finality undermines Blueford’s reliance on Green v. United States, 355 U. S. 184 (1957), and Price v. Georgia, 398 U. S. 323 (1970). In those cases, we held that the Double Jeopardy Clause is violated when a defendant, tried for a greater offense and convicted of a lesser included offense, is later retried for the greater offense. See Green, supra, at 190; Price, supra, at 329. Blueford argues that the only fact distinguishing his case from Green and Price is that his case involves a deadlock on the lesser included offense, as opposed to a conviction. In his view, that distinction only favors him, because the Double Jeopardy Clause should, if anything, afford greater protection to a defendant who is not found guilty of the lesser included offense.
Blueford’s argument assumes, however, that the votes reported by the foreperson did not change, even though the jury deliberated farther after that report. That assumption is unjustified, because the reported votes were, for the reasons noted, not final. Blueford thus overlooks the real distinction between the cases: In Green and Price, the verdict of the jury was a final decision; here, the report of the foreperson was not.
*609 B
Blueford maintains that even if the jury did not acquit him of capital and first-degree murder, a second trial on those offenses would nonetheless violate the Double Jeopardy Clause, because the trial court’s declaration of a mistrial was improper. Blueford acknowledges that a trial can be discontinued without barring a subsequent one for the same offense when “particular circumstances manifest a necessity” to declare a mistrial. Wade v. Hunter, 336 U. S. 684, 690 (1949); see also United States v. Perez, 9 Wheat. 579, 580 (1824). He also acknowledges that the trial court’s reason for declaring a mistrial here — that the jury was unable to reach a verdict — has long been considered the “classic basis” establishing such a necessity. Arizona v. Washington, 434 U. S. 497, 509 (1978). Blueford therefore accepts that a second trial on manslaughter and negligent homicide would pose no double jeopardy problem. He contends, however, that there was no necessity for a mistrial on capital and first-degree murder, given the foreperson’s report that the jury had voted unanimously against guilt on those charges. According to Blueford, the court at that time should have taken “some action,” whether through partial verdict forms or other means, to allow the jury to give effect to those votes, and then considered a mistrial only as to the remaining charges. Reply Brief 11, n. 8.
We reject that suggestion. We have never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse— let alone to consider giving the jury new options for a verdict. See Renico v. Lett, 559 U. S. 766, 775 (2010).[2] As per *610 mitted under Arkansas law, the jury’s options in this case were limited to two: either convict on one of the offenses, or acquit on all. The instructions explained those options in plain terms, and the verdict forms likewise contemplated no other outcome. There were separate forms to convict on each of the possible offenses, but there was only one form to acquit, and it was to acquit on all of them. When the foreperson disclosed the jury’s votes on capital and first-degree murder, the trial court did not abuse its discretion by refusing to add another option — that of acquitting on some offenses but not others. That, however, is precisely the relief Blueford seeks — relief the Double Jeopardy Clause does not afford him.
* ⅝ *
The jury in this case did not convict Blueford of any offense, but it did not acquit him of any either. When the jury was unable to return a verdict, the trial court properly declared a mistrial and discharged the jury. As a consequence, the Double Jeopardy Clause does not stand in the way of a second trial on the same offenses.
The judgment of the Supreme Court of Arkansas is

Affirmed.

 In reaching a contrary conclusion, post, at 615 (opinion of Sotomayor, J.), the dissent construes the jury instructions to “require a jury to complete its deliberations on a greater offense before it may consider a lesser,” post, at 612 (emphasis added). But no such requirement can be found in the text of the instructions themselves. And the dissent’s attempt to glean such a requirement from the Arkansas Supreme Court’s decision in Hughes v. State, 347 Ark. 696, 66 S. W. 3d 645 (2002), is unavailing, for that decision nowhere addresses the issue here — whether a jury can reconsider a greater offense after considering a lesser one.

Finding our reliance on Renico “perplexing,” the dissent reads that decision to have “little to say about a trial judge’s responsibilities, or this Court’s, on direct review.” Post, at 620-621, n. 4. But Renico’s discussion of the applicable legal principles- concerns just that, and the dissent in any event does not dispute that we have never required a trial court to consider any particular means of breaking a jury impasse.