Justice Alito,
dissenting.
The Court holds that the Double Jeopardy Clause bars petitioner’s retrial for arson because his attorney managed to convince a judge to terminate petitioner’s first trial prior to verdict on the specious ground that the offense with which he was charged contains an imaginary “element” that the prosecution could not prove. The Court’s decision makes no sense. It is not consistent with the original meaning of the *331 Double Jeopardy Clause; it does not serve the purposes of the prohibition against double jeopardy; and contrary to the Court’s reasoning, the trial judge’s ruling was not an “acquittal,” which our cases have “consistently” defined as a decision that “‘actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'' ” Smith v. Massachusetts, 543 U. S. 462, 468 (2005) (quoting United States v. Martin Linen Supply Co., 480 U. S. 564, 571 (1977); emphasis added). For no good reason, the Court deprives the State of Michigan of its right to have one fair opportunity to convict petitioner, and I therefore respectfully dissent.
I
After Detroit police officers heard an explosion at a burning house, they observed petitioner running away from the building with a gasoline can. The officers pursued and ultimately apprehended petitioner, who admitted that he had burned down the house. No one was living in the house at the time of the fire.
If the house in question had been a “dwelling house,” petitioner could have been charged under Mich. Comp. Laws § 750.72 (1981) for burning a dwelling, an offense punishable by imprisonment for up to 20 years. But petitioner was instead charged with “[bjurning of other real property” in violation of Mich. Comp. Laws §750.73. This offense, which carries a maximum penalty of 10 years’ imprisonment, applies to “[a]ny person who wilfully or maliciously burns any building or other real property ... other than those specified in [§750.72].” This crime is a lesser included offense of the crime of burning a dwelling house. The “necessary elements to prove either offense are the same, except to prove the greater [offense] it must be shown that the building is a dwelling.” 491 Mich. 1, 19-20, 810 N. W. 2d 535, 545-546 (2012) (internal quotation marks omitted). To prove the lesser offense, however, ‘“it is not necessary to prove that *332 the building is not a dwelling.’ ” Id., at 20, 810 N. W. 2d, at 546 (emphasis added).
At the close of the prosecution’s case, petitioner’s attorney moved for a directed verdict on the ground that (1) the prosecution was required to prove, as an “element” of the charged offense, that “the building was not a dwelling” and (2) “the prosecution had failed to prove that the burned building was not a dwelling house.” Id., at 5, 810 N. W. 2d, at 537. The prosecutor responded by arguing that nothing in the charged offense requires proof that the building was not a dwelling, and the prosecutor requested “a moment” to “pull the statute” and “consult with [her] supervisors.” Id., at 5-7, 810 N. W. 2d, at 537-539 (internal quotation marks omitted). The trial judge denied the prosecutor’s requests and erroneously concluded that the prosecution was required to prove that the burned building was not a dwelling. After determining that the State had not proved this nonexistent “element,” the trial judge granted petitioner’s motion for a directed verdict and entered an order that it labeled an “[acquittal.” App. to Pet. for Cert. 72.
The trial judge’s ruling was plainly wrong, and on appeal, defense counsel did not even attempt to defend its correctness, conceding that the judge had “wrongly added an extraneous element to the statute” under which his client was charged. 491 Mich., at 3, 810 N. W. 2d, at 536; see also 288 Mich. App. 410, 416, and n. 2, 794 N. W. 2d 848, 852, and n. 2 (2010). The Michigan Court of Appeals agreed with this concession and went on to hold that the trial judge’s ruling did not constitute an “acquittal” for double jeopardy purposes because the ruling did not represent “a resolution in the defendant’s favor ... of a factual element necessary for a criminal conviction.” Id., at 421-422, 794 N. W. 2d, at 856 (internal quotation marks omitted). The Michigan Supreme Court affirmed, holding that when, as here, a trial judge erroneously adds an extra “element” to a charged offense and subsequently determines that the prosecution did not prove *333 that extra “element,” the trial judge’s decision is not based on the defendant’s guilt or innocence of the elements of the charged offense. 491 Mich., at 3-4, 19-21, 810 N. W. 2d, at 536-537, 545-546. Accordingly, the Michigan Supreme Court concluded that the judge’s ruling in this case “does not constitute an acquittal for the purposes of double jeopardy and retrial is ... not barred.” Id., at 4, 810 N. W. 2d, at 537.
I—i ⅜—I
This Court now reverses the decision of the State Supreme Court, but the Court’s holding is supported by neither the original understanding of the prohibition against double jeopardy nor any of the reasons for that prohibition.
A
The prohibition against double jeopardy “had its origin in the three common-law pleas of autrefois acquit, autrefois convict, and pardon,” which “prevented the retrial of a person who had previously been acquitted, convicted, or pardoned for the same offense.” United States v. Scott, 437 U. S. 82, 87 (1978); see Crist v. Bretz, 437 U. S. 28, 33 (1978). As the Court has previously explained, “the common-law protection against double jeopardy historically applied only to charges on which a jury had rendered a verdict.” Smith, supra, at 466 (emphasis added).[1] As a result, the original *334 understanding of the Clause, which is “hardly a matter of dispute,” Scott, supra, at 87, does not compel the Court’s conclusion that a defendant is acquitted for double jeopardy purposes whenever a judge issues a preverdict ruling that the prosecution has failed to prove a nonexistent “element” of the charged offense.
Although our decisions have expanded double jeopardy protection beyond its common-law origins, see, e. g., Smith, 543 U. S., at 466-467 (acknowledging the Court’s expansion of “the common-law protection against double jeopardy”); Crist, supra, at 33-34, I nonetheless count it significant that the result the Court reaches today finds no support in the relevant common-law analogues that “lie at the core of the area protected by the Double Jeopardy Clause,” see Scott, 437 U. S., at 96. And given how far we have departed from the common-law principles that applied at the time of the founding, we should at least ensure that our decisions in this area serve the underlying purposes of the constitutional prohibition against double jeopardy. See id., at 95-96,100-101. Yet today’s decision fails to advance the purposes of the Double Jeopardy Clause.
B
The Double Jeopardy Clause is largely based on “the deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.” Yeager v. United States, 557 U. S. 110, 117-118 (2009) (internal quotation marks omitted); see also Blueford v. Arkansas, 566 U. S. *335 599, 605 (2012); Martin Linen, 430 U. S., at 569. Allowing retrial in the circumstances of the present case would not result in any such abuse. The prosecution would not be afforded a second opportunity to persuade the factfinder that its evidence satisfies the actual elements of the offense. Instead, because the trial judge’s ruling in the first trial was not based on an actual element of the charged offense, retrial would simply give the prosecution one fair opportunity to prove its case.
Allowing retrial in this case would not permit prosecutors “to make repeated attempts to convict an individual for an alleged offense,” Yeager, supra, at 117. It was petitioner, not the prosecutor, who sought to terminate the trial prior to verdict. Thus, contrary to the Court’s unexplained suggestion, see ante, at 319-320, “[t]his case hardly presents the specter of ‘an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact,’ ” Sattazahn v. Pennsylvania, 537 U. S. 101, 114-115 (2003) (quoting Scott, supra, at 96). On the contrary, this is a case in which defense counsel fooled the judge into committing an error that provided his client with an undeserved benefit, the termination of a trial that the defense obviously did not want to run to completion. The Double Jeopardy Clause does not require that the defense receive an even greater benefit, the protection provided by an acquittal. As this Court has repeatedly emphasized in double jeopardy cases, a State has an interest in receiving “one complete opportunity to convict those who have violated its laws,” Sattazahn, supra, at 115 (internal quotation marks omitted); Scott, supra, at 100, but today’s decision deprives the State of Michigan of this valuable right.
C
The Court’s decision also flies in the face of our established understanding of the meaning of an acquittal for double jeop *336 ardy purposes. The Double Jeopardy Clause provides that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb.” U. S. Const., Arndt. 5 (emphasis added). Thus, “[d]ouble~jeopardy analysis focuses on the individual ‘offence’ charged.” Smith, 543 U. S., at 469, n. 3. And to determine what constitutes “the individual ‘of-fence’ charged,” ibid., the Court homes in on the elements of the offense. See United States v. Dixon, 509 U. S. 688, 696 (1993) (“In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the ‘same-elements’ test, the double jeopardy bar applies”). Consistent with the constitutional text’s focus on the “offence”—and thus the elements—with which a defendant is charged, the Court’s “double-jeopardy cases have consistently” defined an acquittal as a decision that “‘actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.’ ” Smith, supra, at 468 (quoting Martin Linen, supra, at 571); see also Scott, supra, at 97 (“[A] defendant is acquitted only when the ruling of the judge, whatever its label, actually represents a resolution in the defendant’s favor, correct or not, of some or all of the factual elements of the offense charged” (internal quotation marks and brackets omitted)).
Today, the Court effectively abandons the well-established definition of an acquittal. Indeed, in the face of our repeated holdings that an acquittal for double jeopardy purposes requires a “ ‘resolution, correct or not, of some or all of the factual elements of the offense charged,’ ” Smith, supra, at 468; Martin Linen, supra, at 571; see also Scott, supra, at 97, the Court now declares that “the touchstone [is] not whether any particular elements were resolved,” ante, at 324 (emphasis added). Instead, the Court proclaims that the dispositive question is whether a midtrial termination represented a “procedural dismissa[l]” or a “substantive rulin[g],” ante, at 319. This reformulation of double jeopardy law is not *337 faithful to our precedents—or to the Double Jeopardy Clause itself. The key question is not whether a ruling is “procedural” or “substantive” (whatever those terms mean in this context), but whether a ruling relates to the defendant’s factual guilt or innocence with respect to the “offence,” see U. S. Const., Arndt. 5—and thus the elements—with which he is charged. See Scott, 437 U. S., at 87, 97-99, and n. 11.
When a judge evaluates the evidence and determines that the prosecution has not proved facts that are legally sufficient to satisfy the actual elements of the charged offense, the ruling, however labeled, represents an acquittal because it is founded on the defendant’s factual innocence. See Martin Linen, supra, at 572. But when a judge manufactures an additional “element” of an offense and then holds that there is insufficient evidence to prove that extra “element,” the judge has not resolved the defendant’s “factual guilt or innocence” as to any of the actual elements of the offense.[2] Thus, the ruling, no matter what the judge calls it, does not acquit the defendant of the offense with which he is charged. No acquittal occurs when a criminal trial is terminated “on a basis unrelated to factual guilt or innocence of the offense of which [a defendant] is accused.” Scott, 437 U. S., at 87, 94-95, 98-99. “[I]n a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant.” Id., at 98-99 (reasoning that, in *338 such a case, the defendant was “neither acquitted nor convicted, because he himself successfully undertook to persuade the trial court not to submit the issue of guilt or innocence to the jury which had been empaneled to try him”).
III
Contrary to the Court’s opinion, its decision in this case is not supported by prior precedent. In all three of the principal cases on which the Court relies—Smalis v. Pennsylvania, 476 U. S. 140 (1986); Smith, supra; and Arizona v. Rumsey, 467 U. S. 203 (1984)—trial judges ruled that the prosecution had failed to introduce sufficient evidence to prove one or more of the actual elements of the offenses in question. In none of these cases (and in none of our other double jeopardy cases) did a trial judge terminate a prosecution before verdict based on an element of the judge’s own creation.
The first two cases, Smalis and Smith, involved garden variety preverdict acquittals, i. e., rulings based on the ground that the prosecution had failed to introduce sufficient evidence to prove one or more of the actual elements of an offense. (Using conventional modern terminology, Rule 29(a) of the Federal Rules of Criminal Procedure explicitly labels such rulings “acquittal[s].”)
In Smalis, the judge, at the close of the prosecution’s case in chief, granted a demurrer with respect to certain charges on the ground that the evidence regarding those charges was “legally insufficient to support a conviction.” 476 U. S., at 141. The State Supreme Court held that this ruling was not an acquittal for double jeopardy purposes because it was based on a legal determination (i. e., that the evidence was not sufficient) rather than a factual finding, but we rejected that distinction. Id., at 143-144. See also Sanabria v. United States, 437 U. S. 54, 71-72 (1978).
Smith involved a similar situation. There, one of the elements of a firearms offense with which the defendant was *339 charged required proof that the gun “had a barrel ‘less than 16 inches’ in length,” 543 U. S., at 464, and the trial judge dismissed this charge before verdict on the ground that the prosecution had not introduced sufficient evidence to establish this undisputed element, id., at 464-465. Before the remaining charges were submitted to the jury, however, the judge reversed this ruling and allowed the charge to go to the jury. Id., at 465. We held, however, that the judge’s prior ruling constituted an acquittal and therefore barred the defendant’s conviction for this offense. Id., at 467-469. Thus, both Smalis and Smith involved rulings that were very different from the one at issue here. In both of those earlier cases, the trial judges held that the evidence was insufficient to prove undisputed elements of the offenses in question. In neither case did the judge invent a new element.
The final ease, Rumsey, differs from Smalis and Smith in only one particular. Like Smalis and Smith, Rumsey involved a ruling that the prosecution’s evidence was insufficient to prove an element, but in Rumsey the ruling was predicated on a misconstruction of an element. In that case, after the defendant was found guilty of first-degree murder, the “trial judge, with no jury, . . . conducted a separate sentencing hearing” at which he determined that no aggravating circumstances were present. 467 U. S., at 205. In particular, the judge found that the prosecution had not proved that the murder had been committed “ ‘as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.’ ” Id., at 205-206 (quoting Ariz. Rev. Stat. Ann. § 13-703(F)(5) (Supp. 1983-1984)). The judge reached this conclusion because, in his (incorrect) view, that aggravating circumstance was limited to contract killings. 467 U. S., at 205-206. Holding that the judge’s ruling constituted an acquittal on the merits of the question whether a death sentence was appropriate, we noted that the ruling rested on “a misconstruction of the statute defining the pecu *340 niary gain aggravating circumstance.” Id., at 211. Accordingly, the ruling was based on a determination that there was insufficient evidence to prove a real element; it was not based on the judicial invention of an extra “element.” And for that reason, it does not support the nonsensical result that the Court reaches today.
The Court may feel compelled to reach that result because it thinks that it would be unworkable to draw a distinction between a preverdict termination based on the trial judge’s misconstruction of an element of an offense and a preverdict termination based on the judge’s perception that a statute contains an “element” that is actually nonexistent. This practical concern is overblown. There may be cases in which this determination presents problems, but surely there are many cases in which the determination is quite easy. The present case is a perfect example, for here there is no real dispute that the trial judge’s ruling was based on a nonexistent statutory “element.” As noted, defense counsel conceded on appeal that the judge had “wrongly added an extraneous element to the statute” under which his client was charged. 491 Mich., at 3, 810 N. W. 2d, at 536.
Another good example is provided by State v. Korsen, 138 Idaho 706, 69 P. 3d 126 (2003), where a Magistrate erroneously concluded that the offense of criminal trespass under Idaho law requires a showing that the defendant did something to justify the property owner’s request for the defendant to leave the premises. Id., at 710, 716-717, 69 P. 3d, at 130, 136-137. There is no question that the Magistrate in Korsen “effectively created an additional statutory element” before concluding that the prosecution had presented insufficient evidence as to this purported “element.” See ibid. (holding that double jeopardy did not bar a retrial because the Magistrate’s “finding did not actually determine in [defendant’s] favor any of the essential elements of the crime of trespass”).
*341 Cases in which it can be said that a trial judge did not simply misinterpret a real element of an offense but instead invented an entirely new and nonexistent “element” are eases in which the judge’s, error is particularly egregious. Permitting retrial in these egregious cases is especially appropriate.
* * *
I would hold that double jeopardy protection is not triggered by a judge’s erroneous preverdict ruling that creates an “element” out of thin air and then holds that the element is not satisfied. I therefore respectfully dissent.

 See also Crist, 437 U. S., at 33 (“The Fifth Amendment guarantee against double jeopardy derived from English common law, which followed . . . the relatively simple rule that a defendant has been put in jeopardy only when there has been a conviction or an acquittal—after a complete trial. . . . And it is clear that in the early years of our national history the constitutional guarantee against double jeopardy was considered to be equally limited in scope”); 3 J. Story, Commentaries on the Constitution of the United States § 1781, p. 659 (1833) (“The meaning of [the Double Jeopardy Clause] is, that a party shall not be tried a second time for the same offence, after he has once been convicted, or acquitted of the offence charged, by the verdict of a jury, and judgment has passed thereon for or against him. But it does not mean, that he shall not be tried for the *334 offence a second time, if the jury have been discharged without giving any verdict ...” (emphasis added)); 2 M. Hale, Pleas of the Crown 246 (1778) (“It must be an acquittal upon trial either by verdict or battle”).

 Because culpability for an offense can be negated by proof of an affirmative defense, the Court has held that a ruling that the prosecution did not submit sufficient evidence to rebut an affirmative defense constitutes an acquittal for double jeopardy purposes. See Burks v. United States, 437 U. S. 1, 10-11 (1978); United States v. Scott, 437 U. S. 82, 97-98 (1978). Thus, as used in this opinion, the “elements” of an offense include legally recognized affirmative defenses that would negate culpability.