**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WILLIAM DANIEL HARDIN,

      Petitioner - Appellant,

v.

SEAN PRUITT,* Warden; PHILIP J.
WEISER, Attorney General of the State of
Colorado,

      Respondents - Appellees.

No. 19-1201
(D.C. No. 1:17-CV-02626-CMA)
(D. Colo.)

_____

**ORDER AND JUDGMENT**\*\*
_____

Before **HOLMES**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

      William Daniel Hardin, a Colorado state prisoner proceeding pro se, appeals

the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C.

§ 2254. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

      \* We have substituted the current warden of the Arkansas Valley Correctional
Facility, Sean Pruitt, for the former warden, Terry Jaques, under Fed. R. App. P.
43(c)(2).

      \*\* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Hardin was accused of robbing three men—Victor Irving, Isaac Fisher, and Lloyd Rhodes—and of killing two of them, Irving and Fisher. The crimes occurred at the victims' drug house in Denver. The State of Colorado charged Hardin with one count of aggravated robbery of all three men, two counts of felony murder, and two counts of after-deliberation murder. In 1988, a jury found him guilty by separate verdict forms of two counts of aggravated robbery (Irving and Rhodes), two counts of felony murder (Irving and Fisher), and two counts of after-deliberation murder (Irving and Fisher). The jury acquitted Hardin of aggravated robbery of Fisher. The trial court sentenced Hardin to consecutive terms of imprisonment of sixteen years for each aggravated robbery conviction and to life imprisonment for each felony-murder conviction. The court did not sentence Hardin on the after-deliberation murder convictions.

Hardin appealed, and his appeal included a claim that his trial counsel provided constitutionally ineffective assistance (IAC). *See* R., Vol. 1 at 164-65. Soon after, he requested and obtained a limited remand to pursue the IAC claim under Colorado Rule of Criminal Procedure 35(c). The postconviction proceeding languished until 1997, when the Colorado Court of Appeals (CCA) vacated the limited remand and decided the direct appeal (*Hardin I*). The CCA affirmed the convictions but remanded with instructions that the trial court vacate the felony

murder conviction concerning Irving's death,[1] enter a judgment of conviction for the count of after-deliberation murder of Irving, and resentence Hardin accordingly. The CCA determined that Hardin's IAC claim should be resolved in a postconviction proceeding.[2] The Colorado Supreme Court denied review.

Hardin filed a pro se Rule 35(c) motion. The postconviction court summarily denied the motion and did not resentence Hardin in accordance with the remand instructions. In 2000, the CCA reversed and remanded with instructions to hold further proceedings on the postconviction claims and resentence Hardin as previously instructed.

After the remand, the postconviction court appointed another attorney in 2001 to represent Hardin, but the case again languished for years until 2012, when a new judge (the third since the second remand) took over. Hardin's attorney then filed a supplement to the pro se Rule 35(c) motion, *see id.* at 441-512, which we shall refer to as the Rule 35(c) motion. The postconviction court held a three-day hearing on the motion and denied it. The CCA affirmed. *See id.* at 269-90 (*Hardin III*).[3] The Colorado Supreme Court denied review.

---

[1] The CCA ruled that the conviction for aggravated robbery of Irving merged with the conviction for felony murder of Irving but did not merge with the conviction for after-deliberation murder of Irving.

[2] The CCA also decided a number of issues that are germane to the analysis of some of the IAC subclaims at issue in this appeal. We reserve discussion of those rulings until our analysis.

[3] *Hardin III* is published, *see People v. Hardin*, 405 P.3d 379 (Colo. App. 2016), but we cite to the record for convenience.

3

Hardin then initiated a pro se § 2254 proceeding.  The district court denied relief and a certificate of appealability (COA).  *See id.* at 546-73.  This court granted a COA on Hardin's IAC claim and otherwise denied a COA.  In his appellate briefs, Hardin takes issue with the district court's disposition of five IAC subclaims labeled as ii(A), ii(B), ii(C), ii(E), and ii(F).  We address the subclaims in the following order:  ii(A), ii(F), ii(B) and ii(C) (together), and ii(E).  In so doing, we afford Hardin's pro se filings a liberal construction, but we do not act as his advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## II.  Discussion

### A.    Subclaim ii(A), failure to object to duplicitous aggravated-robbery charge

In subclaim ii(A) of his § 2254 petition, Hardin argued that trial counsel was constitutionally ineffective when he failed to object to the information charging all three aggravated robberies in one count.  The district court ruled that because Hardin presented this subclaim in his Rule 35(c) motion but not in the ensuing appeal, the claim was unexhausted, and Hardin could not avail himself of the procedural-default exception carved out in *Martinez v. Ryan*, 566 U.S. 1 (2012).  *Martinez* provides that in states (like Colorado) where a trial-counsel IAC claim "must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Id.* at 17.  Under *Martinez*, a claim is "substantial" if it "has some merit."  *Id.* at 15.  The *Martinez* exception is limited to ineffective

4

assistance of initial postconviction counsel; it does not encompass "attorney errors in . . . appeals from initial-review collateral proceedings." *Id.* at 16.

We conclude that the district court erred in deeming subclaim ii(A) procedurally defaulted due to failure to exhaust. But we further conclude that subclaim ii(A) fails on the merits.

### 1. Subclaim ii(A) is not procedurally defaulted

Exhaustion requires "one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), and the claim must have "been 'fairly presented' to the state court," *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). The "crucial inquiry" in the fair-presentation analysis "is whether the substance of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (internal quotation marks omitted). A claim can also be exhausted, and therefore ripe for review under the deferential standards of § 2254(d), if the state appellate court considers it sua sponte. *Alverson v. Workman*, 595 F.3d 1142, 1153 n.3 (10th Cir. 2010). As the following discussion illustrates, Hardin "fairly presented" subclaim ii(A) to both the postconviction court and the CCA, but even if he had not, the CCA actually decided this subclaim as a matter of constitutional law.

Hardin advanced subclaim ii(A) in his Rule 35(c) motion. *See* R., Vol. 1 at 477-79 (arguing that trial counsel was ineffective in failing to object to

5

duplicitous charge).  Although the postconviction court expressly decided two other IAC subclaims concerning what it termed "[t]rial [f]ailures," *see id.* at 220-21, it did not expressly recognize or decide this subclaim.  It did, however, provide a general assessment of *Strickland* prejudice regarding all of the "claimed instances" of IAC and concluded that Hardin had not shown there was a reasonable probability of a more favorable outcome but for any deficient performance.  *See id.* at 221-23; *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that prejudice for IAC claims requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

In his appeal to the CCA, Hardin nominally framed the issue as a matter of state procedural law regarding the postconviction court's failure to provide any findings regarding this subclaim, as required by Colorado Rule of Criminal Procedure 35(c)(3)(V).  *See* R., Vol. 1 at 243-44, 256.  But Hardin also cited *Strickland* and related IAC caselaw, *see id.* at 257, and he further explained why the postconviction court would have found IAC if it had considered this subclaim, *see id.* at 258-60. Hardin argued that, contrary to trial counsel's testimony at the Rule 35(c) hearing, the decision not to object was not strategic because the failure to object (1) exposed Hardin to multiple additional charges carrying consecutive sentences, (2) foreclosed jury deadlock if one juror disagreed that the prosecution had proved aggravated robbery of any one of the named victims, (3) foreclosed outright acquittal if they all disagreed, and (4) foreclosed review on direct appeal.  *See id.* at 259-60.

6

The CCA ruled that the postconviction court did not abuse its discretion by failing to make the specific findings that Rule 35(c)(3)(V) requires. *See id.* at 281-86. The CCA observed that "the postconviction court made factual findings regarding the lack of prejudice Hardin suffered as a result of *any* alleged ineffective assistance of trial counsel." *Id.* at 284. For that reason, the CCA deferred "to those findings and conclude[d] that Hardin ha[d] not satisfied the prejudice prong of the *Strickland* test." *Id.* The CCA noted that the postconviction court had "addressed some allegations [of IAC] generally and the rest specifically" and had reached the final conclusion that "none of the claimed instances of ineffectiveness would, separately or together, likely have had any impact on the outcome of this case." *Id.* (ellipsis and internal quotation marks omitted).

Next, and significantly for merits purposes here, the CCA referred to its earlier ruling on the underlying substantive-duplicity claim in *Hardin I* that Hardin "'failed to demonstrate any prejudice resulting from the manner in which the aggravated robberies were charged,' in part because of the trial court's uncontested power to allow constructive amendments or variances of a criminal information at any time before the verdict." *Id.* at 284-85 (quoting *Hardin I*, *id.* at 172). The CCA found "no support in the record for Hardin's speculative assertions that the trial court (1) would have likely refused to allow the amendment or variance upon objection or (2) abused its discretion in allowing this amendment or variance regardless of whether trial counsel made the desired objection." *Id.* at 285. The CCA further concluded that the postconviction court had either "implicitly or expressly . . . denied all of Hardin's

7

arguments." *Id.* The CCA "therefore determine[d] that the postconviction court's findings of fact and conclusions of law sufficiently provided the basis of its ruling—namely, that Hardin had failed to satisfy the prejudice prong of *Strickland*." *Id.* Although the CCA ruled that the lack of specific factual findings did not amount to an abuse of discretion, *see id.* at 286, it also decided the constitutional IAC issue when it "assum[ed] without deciding that trial counsel's failures to object constituted ineffective assistance," "defer[red] to the postconviction court's factual findings," and "determine[d] that Hardin ha[d] not satisfied the prejudice prong of the *Strickland* test." *Id.*

Based on the foregoing review, we conclude that, despite nominally framing the issue as a matter of state procedure, Hardin fairly presented a constitutional IAC claim, and in any event, the CCA rendered a decision on that issue when it concluded there was no *Strickland* prejudice. Therefore, subclaim ii(A) is exhausted, and the *Martinez* exception to procedural default is irrelevant.

## 2. Subclaim ii(A) fails on the merits

Having established that subclaim ii(A) is not procedurally defaulted, we turn to its merits. Because the CCA decided the claim on the merits, § 2254(d)'s deferential standard of review applies. Under that standard, Hardin is entitled to relief on this subclaim only if the CCA's adjudication of it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based

8

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

In his appellate briefs, Hardin has not addressed *Strickland* prejudice regarding subclaim ii(A), instead focusing on whether *Martinez* rescues the subclaim from procedural default. And we find no adequate showing of prejudice in his Rule 35(c) or § 2254 filings.

In his Rule 35(c) motion, Hardin emphasized that when the CCA considered the underlying duplicity issue in *Hardin I*, the court repeatedly referred to the fact that at no point in the trial did counsel object to the charge or the trifurcation of the charge in the jury instructions or verdict forms. *See* R., Vol. 1 at 477-78 (discussing *id.* at 172). Hardin also pointed out the CCA's conclusion that although the count was duplicitous when charged, the failure to object prior to trial resulted in waiver of any duplicity objection. *See id.* at 478 (discussing *id.* at 172-73).

As noted above, in his appeal of the denial of the Rule 35(c) motion, Hardin set out four reasons why the failure to object was not strategic: it exposed him to multiple additional charges carrying consecutive sentences, foreclosed jury deadlock if one juror disagreed that the prosecution had proved aggravated robbery of any one of the named victims beyond a reasonable doubt, foreclosed outright acquittal if they all disagreed, and foreclosed review on direct appeal. *Id.* at 259-60. In concluding that Hardin failed to demonstrate *Strickland* prejudice, the CCA did not address these reasons, which could be construed as prejudice arguments. Instead, the CCA focused on a different, and dispositive, prejudice consideration—whether an objection would

have been sustained. *See id.* at 285. The CCA referred to *Hardin I*'s rejection of the substantive duplicitous-count claim on the ground that Hardin failed to show prejudice resulting from the manner the count was charged "because of the trial court's uncontested power to allow constructive amendments or variances of criminal information at any time before the verdict." *Id.* at 284-85 (discussing *Hardin I*, *id.* at 171-72). And the CCA found "no support in the record for Hardin's speculative assertions that the trial court (1) would have likely refused to allow the amendment or variance upon objection or (2) abused its discretion in allowing this amendment or variance regardless of whether trial counsel made the desired objection." *Id.* at 285.

Hardin never addressed these reasons in his § 2254 filings, arguing only that "had the duplicitous counts been dismissed," there was "a reasonable likelihood that he would not have been convicted of [aggravated] robbery." *Id.* at 534. Nor has he addressed those reasons on appeal. And he would fare no better even if he had reiterated the four points he raised in his brief to the CCA (and which the CCA did not expressly address), because those points are equally speculative—they fall short of showing a reasonable probability that the outcome of his trial would have been different had trial counsel raised a duplicity objection.

For these reasons, we conclude that the CCA's decision is entitled to § 2254(d) deference. Accordingly, we affirm the denial of relief on subclaim ii(A).

10

**B.     Subclaim ii(F), failure to object when the trial court refused**
**to provide a copy of Rhodes's testimony upon the jury's request**

In subclaim ii(F) of his § 2254 petition, Hardin argued that trial counsel was constitutionally ineffective when he failed to object to the trial court's refusal to provide the jury with a copy of the testimony of the surviving victim, Rhodes.  The trial court told the jury it would have to rely on its collective memory because there were only the stenographer's notes and no transcript had yet been prepared.  The district court concluded that because Hardin presented this subclaim in his Rule 35(c) motion but not in the ensuing appeal, the claim was unexhausted, and therefore Hardin could not avail himself of *Martinez*.

Hardin disputes the district court's procedural ruling, but we need not sort out the argument.  Section 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  And in the interest of judicial economy, we may consider unexhausted claims on the merits despite a failure to exhaust.  *Milton v. Miller*, 812 F.3d 1252, 1265 (10th Cir. 2016).  We elect to do so with respect to subclaim ii(F).  Under these circumstances, our review is de novo.  *See Allen v. Mullin*, 368 F.3d 1220, 1235 (10th Cir. 2004) (reviewing de novo an unexhausted claim and citing § 2254(b)(2)).

On direct appeal, the CCA ruled, albeit on plain-error review of the underlying substantive claim (i.e., not an IAC claim), that "[n]othing in the record indicates that defendant was prejudiced by the [trial court's] response" to the jury's request, and

11

"defense counsel may have made the tactical decision not to have the testimony read to avoid possible prejudice to defendant." R., Vol. 1 at 176. In his § 2254 filings, Hardin offered only a conclusory argument that, had the trial court provided the requested transcript, the jury would not have convicted him of at least "the aggravated robbery charge (and in turn the felony murder charges as well)." *Id.* at 537. And even in his Rule 35(c) motion, Hardin (through counsel) merely pointed out that one main issue for the jury was whether to believe Rhodes's testimony (which the jury could not review) or Hardin's videotaped statement to the police (which the jury could review), and he suggested that "a comparison of the statements would have been of assistance to the jury." *Id.* at 480.[4] In other words, at no point has Hardin ever attempted to explain why there is a reasonable probability of a

---

[4] In its order denying the Rule 35(c) motion, the postconviction court addressed Hardin's version of events, which apparently was drawn from his videotaped statement (he did not testify at trial): "He admits he was there [at the victims' drug house], visiting his friends. He claims that Irving and Fisher began fighting and that as they struggled for a gun Irving shot Fisher. He claims that he then tried to wrestle the gun from Irving and the gun 'went off.'" R., Vol. 1 at 221-22. The court then pointed out how Hardin's self-defense theory conflicted with a raft of evidence, including that there was a total of six shots: "Fisher was shot once in the neck, Irving twice in the back," a "fourth shot struck a wall near where Rhodes testified he had run," a fifth shot "was found in a hall where Rhodes said he ran, and the sixth on the floor of a stairwell leading from that hall." *Id.* at 222. There also was testimony from a woman who heard gunshots and "saw a tall black man [Hardin, apparently] running after a shorter stockier man she was later able to identify as Rhodes." *Id.* Other witnesses heard Rhodes "yell for help and ask for people to call the police." *Id.* The postconviction court considered Hardin's theory "not even really a self-defense theory, but rather a theory of serial accidents," and observed that "[n]o defense witness, nor defense counsel in closings, could explain why [Hardin] would be chasing Rhodes after this series of accidents, or why Rhodes, and not [Hardin], would be calling for help and asking bystanders to call the police." *Id.*

12

different outcome if trial counsel had objected to the trial court's ruling on the jury's request. That would require showing a reasonable probability that (1) the trial court would have sustained the objection and provided the jury with a transcript and (2) the verdict on any of the counts would have been different. In view of this failure, we affirm the denial of relief on subclaim ii(F).

**C.     Subclaims ii(B) and ii(C), failure to object to sentences because of acquittal on aggravated robbery as to one of the three victims (Fisher)**

In subclaims ii(B) and ii(C) of his § 2254 petition, Hardin summarily argued that trial counsel was constitutionally ineffective when he failed to object to (1) the sentence for felony murder because the jury acquitted him of the underlying felony (aggravated robbery), and (2) the sentences for aggravated robbery because the jury acquitted him of aggravated robbery. *See* R., Vol. 1 at 89-90. In his traverse, Hardin framed the issue a bit differently. He argued that there was insufficient evidence to convict him on the aggravated robbery count and that trial counsel was ineffective in failing to object to the sufficiency of the evidence on that count. *Id.* at 535. He appears to have incorporated by reference part of his argument on subclaim ii(A)— that aggravated robbery in Colorado requires proof that the victim had the ability to exercise control over the object of the robbery, and the jury was never instructed to that effect, *see id.* at 533-34. Hardin opined that if counsel had objected, there is a reasonable probability that the aggravated robbery count would have been dismissed

13

"along with the felony murder counts." *Id.* at 536.[5]  This opinion appears to rest on his view that either (1) charging three counts of aggravated robbery in one count was duplicitous, and trial counsel should have objected on that ground; or (2) there was insufficient evidence to sustain the three aggravated robbery counts after the constructive amendment of the information (as the CCA had ruled in *Hardin I*), and trial counsel should have objected to trifurcation of that count.  *See id.* at 535-36.

Observing that these two subclaims were not raised in the Rule 35(c) motion, *see id.* at 568, the district court concluded that *Martinez* did not excuse the procedural default, *see id.* at 569-71.  The court concluded that subclaim ii(B)'s premise—that Hardin should not have been sentenced for felony murder of Fisher because the jury acquitted him of aggravated robbery of Fisher—was flawed given *Hardin I*'s explanation that the jury found Hardin guilty of felony murder of Fisher because that murder "'occurred during the course of the robbery of the other two [victims].'"  *Id.* at 570 (quoting *Hardin I*, *id.* at 168).  Because the underlying issue

---

[5] Hardin also stated that at the Rule 35(c) hearing, trial counsel testified that he did not object to trifurcation of the original count because he planned to move for dismissal of the counts due to insufficient evidence, but he never did.  *See* R., Vol. 1 at 535.  He repeats this argument on appeal.  *See* Aplt. Opening Br. at 3(n).  In support, he points to four pages of trial counsel's testimony (66-68 and 104), but nothing in those pages (or elsewhere in the transcript) suggests that counsel planned to seek dismissal of the aggravated robbery counts for any reason, let alone the reason Hardin ascribes to him.  Instead, trial counsel said the counts did not matter much because (1) Hardin was facing two life sentences for the murders, and the jury would either find Hardin guilty of all counts or none; and (2) he wanted as many charges as possible so the jury would perceive Hardin to be a "monster," an image that trial counsel planned to debunk on cross-examination.  *See* Transcript of Rule 35(c) Hearing at 66-68, 104, *People v. Hardin*, No. 87CR1542 (Sept. 13, 2013).

lacked merit, the district court concluded that subclaim ii(B) itself failed, and therefore *Martinez* did not excuse the procedural default. *Id.* (citing *Lafler v. Cooper*, 566 U.S. 156, 167 (2012), for the principle that an IAC claim fails if its underlying premise lacks merit).

The district court construed subclaim ii(C), failure to object to the sentences for aggravated robbery because Hardin was acquitted of aggravated robbery, as referring to the acquittal of the aggravated robbery charge as to Fisher and the fact that Hardin was originally charged with only one count of aggravated robbery of all three victims. R., Vol. 1 at 571. The court concluded that the subclaim lacked merit because in *Hardin I*, the CCA held that there was either a constructive amendment to or a variance from the original aggravated robbery count (resulting in three separate counts), and Hardin had not shown prejudice from the manner in which the robberies were charged. *Id.* Accordingly, the district court concluded that subclaim ii(C) was not substantial under *Martinez*, postconviction counsel did not render ineffective assistance by failing to raise it, and the subclaim was procedurally defaulted. *Id.*

On appeal, Hardin posits that trial counsel was ineffective in failing to seek dismissal of the aggravated-robbery and felony-murder charges because of the alleged instructional error and evidentiary insufficiency. But he provides only conclusions that the evidence was insufficient and the jury improperly instructed; he does not discuss the evidence or cite any portion of the state-court record. And it is clear that the IAC claim is not substantial for *Martinez* purposes, because in *Hardin I*, the CCA upheld as a matter of state law the constructive amendment or variance of

15

the aggravated robbery count, *see* R., Vol. 1 at 171-72, and we defer to that conclusion on habeas review, *see Heard v. Addison*, 728 F.3d 1170, 1175 (10th Cir. 2013) (explaining that deference owed to state-court interpretations of state law "applies with equal force to interpretations of state law 'announced on direct appeal of the challenged conviction'" (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)). Accordingly, we affirm the district court's ruling that subclaims ii(B) and ii(C) are procedurally defaulted and that *Martinez* does not excuse the default.

## D.      Subclaim ii(E), failure to object to "acquittal first" instruction

In subclaim ii(E) of his § 2254 petition, Hardin argued that trial counsel was constitutionally ineffective when he failed to object to the trial court's "acquittal first" instruction.  The instruction provided:  "If you are not satisfied beyond a reasonable doubt that the defendant is guilty of Murder in the First Degree (after deliberation), he may, however, be found guilty of any lesser offense . . . [.]" *Id.* at 156.[6]  Hardin raised the propriety of the instruction on direct appeal, arguing that it precluded the jury from even considering the lesser-included offenses until it had acquitted him of the greater offenses, thereby interfering with the jury's ability to fully consider the lesser-included offenses.  In *Hardin I*, the CCA rejected Hardin's claim because in *People v. Padilla*, 638 P.2d 15 (Colo. 1981) (en banc), the Colorado Supreme Court had rejected the same argument.  R., Vol. 1 at 175.

---

[6] We derive this quote from Hardin's direct appeal brief because we are unable to locate the jury instructions in either the state-court or district-court record, and there is no dispute regarding what the instruction provided.

16

Hardin did not raise subclaim ii(E) in his Rule 35(c) motion, and the district court ruled that it was procedurally defaulted.  The court reasoned that because the underlying issue was resolved on direct appeal based on *Padilla*, "trial counsel was not ineffective for failing to object to an instruction that was consistent with controlling state precedent," postconviction counsel was not ineffective for failing to raise an IAC claim based on the failure to object, the subclaim was not substantial under *Martinez*, and the claim was procedurally defaulted.

On appeal, Hardin argues that the procedural default should be excused because subclaim ii(E) is substantial.  He argues that both the CCA (in *Hardin I*) and the district court erred in relying on *Padilla* for the proposition that the acquittal-first instruction is permissible under Colorado law.  He notes that, as explained in a more recent case, *People v. Richardson*, 184 P.3d 755, 764 n.7 (Colo. 2008) (en banc), Colorado is a "soft transition" state, meaning that it does not require a jury to acquit a defendant of a greater charge before considering a lesser-included charge.  He contends that *Richardson* controls, not *Padilla*, and that the instruction in his case was a "hard transition" instruction.  He also relies on *Beck v. Alabama*, 447 U.S. 625 (1980), arguing that *Beck* provides the controlling rule, and trial counsel should have been aware of *Beck* and lodged an objection to the acquittal-first instruction based on *Beck*.

Hardin's argument wholly lacks merit.  Take first *Richardson*.  There the Colorado Supreme Court noted that Colorado "follows the 'soft transition' approach."  184 P.3d at 764 n.7.  But the court cited *Padilla* among the cases

17

*supporting* this observation, characterizing *Padilla* as "noting that the particular jury instruction in question was proper because, *inter alia*, it could not be 'read to require a unanimous decision on the greater offense before consideration of the lesser.'" *Id.* (quoting *Padilla*, 638 P.2d at 18). Clearly then, *Padilla* did not approve a "hard transition" instruction in a soft-transition state because the instruction did not require unanimous acquittal. Therefore, trial counsel's failure to object to the same instruction in Hardin's case was not constitutionally deficient performance and did not result in *Strickland* prejudice.

Next, *Beck* is not on point. In *Beck*, the Supreme Court considered a state statute that prohibited a judge from giving a jury the option of convicting a defendant of felony murder, which is a lesser-included offense of the capital crime of robbery-intentional killing. 447 U.S. at 628-29. The Court concluded that the death penalty may not "constitutionally be imposed after a jury verdict of guilt of a capital offense, when the jury *was not permitted* to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." *Id.* at 628 (emphasis added) (internal quotation marks omitted). Unlike the jury in *Beck*, Hardin's jury was permitted to consider lesser-included offenses, and under *Padilla*, the instruction did not "deprive [Hardin] of a right to trial by jury," 638 P.2d at 18.[7]

---

[7] Hardin also contends that in her dissenting opinion in *Blueford v. Arkansas*, 566 U.S. 599 (2012), Justice Sotomayor cited *Beck* when discussing "the fact that when a 'soft' transition state tenders a 'hard' transition instruction, the defendant's due process rights are violated in turn requiring reversal of his/her conviction(s)."

In sum, Hardin has not established that subclaim ii(E) is substantial, so we affirm the district court's ruling that it is procedurally defaulted.

### III.  Conclusion

The district court's judgment is affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

Aplt. Opening Br. at 3(o) (citing *Blueford*, 566 U.S. at 612 (Sotomayor, J., dissenting)).  Hardin's contention is unfounded.  There is no statement in Justice Sotomayor's dissent, or anywhere else in *Blueford*, regarding a due process violation when a soft-transition state tenders a hard-transition instruction (double jeopardy was at issue in *Blueford*).  And *Beck* is not cited anywhere in *Blueford*.