
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**LOUIS ANTHONY VARGAS,**
Defendant-Appellant.

Supreme Court Case No. CRA24-025
Superior Court Case No. CF0446-18

## OPINION

## Cite as: 2026 Guam 1

Appeal from the Superior Court of Guam
Argued and submitted on August 20, 2025
Hagåtña, Guam

Appearing for Defendant-Appellant:
Stephen P. Hattori, *Esq.*
Public Defender
Public Defender Service Corporation
779 Route 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
Christine Santos Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
General Crimes Division
134 W. Soledad Ave.
Hagåtña, GU 96910

**E-Received**
3/5/2026 1:40:58 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.[1]

**CARBULLIDO, J.:**

[1]     Defendant-Appellant Louis Anthony Vargas appeals the Superior Court's denial of his two motions to dismiss a superseding indictment on the grounds of double jeopardy and implied acquittal.  In 2021, Vargas was tried on ten counts of criminal sexual conduct—five first-degree ("CSC I") and five second-degree ("CSC II")—each including a vulnerable-victim enhancement.  After a twelve-day trial and approximately thirteen hours of deliberation over three days, the jury found Vargas guilty of one count of CSC II, including the vulnerable-victim enhancement, but remained hung on the other nine counts, resulting in a mistrial.  Vargas appealed, and, after concluding that his constitutional rights had been violated, we vacated his conviction and granted him a new trial.  *People v. Vargas*, 2023 Guam 16, *amended and superseded by*, 2024 Guam 1 ("*Vargas I*").  In July 2024, the prosecution obtained a superseding indictment that re-charged all ten original counts.

[2]     Vargas then moved to dismiss the superseding indictment, arguing: (1) the Double Jeopardy Clause of the Fifth Amendment bars retrial because there was no "manifest necessity" for the mistrial, and (2) that the jury's guilty verdict on one count of CSC II constituted an implied acquittal of an allegedly related count of CSC I.  The Superior Court denied both motions, finding that Vargas consented to the mistrial and, even if he did not, there was manifest necessity due to the deadlocked jury.  The trial court also found that there was no implied acquittal, citing case law that CSC II is not a lesser-included offense of CSC I.  We granted Vargas's unopposed petition for

---

[1] The signatures in this opinion reflect the titles of the Justices at the time this matter was argued and submitted.

interlocutory review to resolve several issues of first impression in this court regarding double jeopardy.

**[3]**     We conclude the Fifth Amendment does not bar Vargas's retrial because the termination of his previous trial was proper due to the "failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed." *See* 9 GCA § 1.24(d)(2) (2005). Additionally, there was no implied acquittal because the jury was not silent on the CSC I charge; there were multiple signs of hopeless deadlock. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**[4]**     The underlying facts are set out in *Vargas I*, 2024 Guam 1 ¶¶ 3–18.

**[5]**     Vargas's twelve-day jury trial was held between April 27, 2021, and May 18, 2021. The jury deliberated over the course of three days, from the afternoon of May 18 until the afternoon of May 20. In total, the jury spent approximately thirteen hours deliberating.[2]

**[6]**     Of the ten counts, the jury returned a guilty verdict on a single count of CSC II, including the vulnerable-victim enhancement. All twenty verdict forms included the language: "If you are unable to decide whether the Defendant is guilty or not guilty of this charge, please have your foreperson sign and date this form below." Record on Appeal ("RA"), tabs 234–53 at 1 (Verdict Forms 1–20, May 20, 2021). For each count on which the jury was undecided, it followed this instruction.

---

[2] Based on the record, the jury's deliberations spanned approximately fifteen hours, including one-hour lunch breaks on the second and third days of deliberation and excluding time when jurors went home. *See* Record on Appeal ("RA"), tab 229 at 3 (Min. Entry, May 18, 2021) (approximately 1.5 hours of deliberation); RA, tab 231 at 2 (Min. Entry, May 20, 2021) (approximately 5.5 hours of deliberation including 1 hour for lunch). While there is no minute entry for the second day of deliberations on May 19, the record shows the trial court instructed the jury to return at 9:00 a.m. and leave at 5:00 p.m. if they were still deliberating at the end of the first day, indicating a deliberation period of approximately eight hours including lunch. *See* Transcript ("Tr.") at 134 (Jury Trial, Day 12, May 18, 2021) ("You are to deliberate until 5:00 [p.m.] . . . [I]f you are still deliberating, you must come back at 9:00 [a.m.] and then you'll leave at 5:00 [p.m.] until you come to some verdict, okay, or decision.").

[7]     The jury foreperson explained that the jury "didn't check either [the guilty or not guilty box], because it was undecided."  Transcript ("Tr.") at 2 (Verdict, May 20, 2021); Verdict Errata at 2 (Aug. 7, 2025).  In response to the trial court's question, "So you were hung on certain charges, right?" the foreperson replied, "Yes.  Yes, Your Honor."  Tr. at 2–3 (Verdict).  The trial court also confirmed later with the jury that they "did not reach a unanimous decision," to which the jurors collectively responded affirmatively.  *Id.* at 5–6.  The trial court declared a mistrial on those remaining counts.  *See* RA, tab 402 at 2 (Dec. & Order re Double Jeopardy, Nov. 5, 2024).

[8]     Shortly thereafter, the People moved to voluntarily dismiss the nine remaining counts without prejudice, and Vargas appealed his single CSC II conviction.  We vacated the CSC II conviction, including the vulnerable-victim enhancement, and remanded for a new trial.  *Vargas I*, 2024 Guam 1 ¶ 32.

[9]     The People obtained a superseding indictment against Vargas, re-charging him with all ten counts submitted to the jury at his original trial.  Vargas first moved to dismiss the superseding indictment on double jeopardy grounds.  He argued that the Double Jeopardy Clause barred retrial because the mistrial was improperly declared absent manifest necessity.  Vargas also moved to dismiss based on the theory of implied acquittal.  The People opposed both motions.

[10]     The Superior Court denied both of Vargas's motions to dismiss in separate decisions and orders.  The trial court determined that retrial was permissible because manifest necessity dictated the mistrial, explaining that, "[t]he most common form of 'manifest necessity' is a mistrial declared by the judge following the jury's declaration that it was unable to reach a verdict."  RA, tab 402 at 6–7 (Dec. & Order re Double Jeopardy) (quoting *People v. Pablo*, 2016 Guam 29 ¶ 24).  Relying on Ninth Circuit precedent, the trial court stated that to determine whether it was appropriate to declare a mistrial due to jury deadlock,

relevant factors . . . to consider include the jury's collective opinion that it cannot agree, the length of the trial and complexity of the issues, the length of time the jury has deliberated, whether the defendant has objected to a mistrial, and the effects of exhaustion or coercion on the jury.

*Id.* at 7 (quoting *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1029 (9th Cir. 2000)). The trial court found that the factors weighed in favor of finding manifest necessity for a mistrial. *See id.* at 7–8.

**[11]** As for Vargas's motion for implied acquittal, the Superior Court determined that "Defendant's conviction of Charge Two (Count Four): Second Degree CSC does not constitute an implied acquittal of any counts of Charge One: First Degree CSC, even though Charge One (Count Five)'s allegations share a corresponding date." RA, tab 404 at 5 (Dec. & Order re Implied Acquittal, Nov. 18, 2024).

**[12]** We granted Vargas's unopposed petition for permission to file an interlocutory appeal.

## II. JURISDICTION

**[13]** "This court has the discretion to grant permission to file an interlocutory appeal in a criminal case under 7 GCA § 3108(b)." *People v. Camacho*, 2025 Guam 16 ¶ 12; *see also* 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-59 (2025)) (establishing appellate jurisdiction over "any cause" decided by Superior Court). We have held that "[i]n the interest of protecting a defendant from the rigors of a trial that may be barred by the Double Jeopardy Clause, this court may exercise its discretionary jurisdiction under [7 GCA §] 3108(b)(2)" to hear an interlocutory appeal in a criminal case. *People v. Torres*, 2008 Guam 26 ¶ 11. However, a criminal defendant does not have a right to an interlocutory appeal every time they claim a double jeopardy violation. *Id.* ¶ 12. We have adopted the Ninth Circuit standard that "allows appeals for all 'colorable' double jeopardy challenges, meaning claims that have 'some possible validity.'" *Id.* (quoting *United States v. Zone*, 403 F.3d 1101, 1104 (9th Cir. 2005) (per curiam)). The Ninth

Circuit has held that a claim is colorable if it is an issue of first impression. *United States v. Price*, 314 F.3d 417, 420 (9th Cir. 2002); *see also United States v. Valenzuela-Arisqueta*, 724 F.3d 1290, 1291 (9th Cir. 2013) ("Because the propriety of the district court's ruling was arguably not clear from our precedent, Valenzuela's double jeopardy argument was 'colorable,' and we have jurisdiction over his appeal." (citation omitted)).

[14]    This court previously granted Vargas's unopposed petition for permission to appeal because, although inadequately briefed, the questions presented several issues of first impression. Order at 4 (Mar. 6, 2025). Additionally, because double jeopardy violations may defy harmless error review, we concluded it was prudent to grant the petition and resolve the merits of the double jeopardy claims prior to Vargas's retrial.[3] *Id.*

### III. STANDARD OF REVIEW

[15]    "We review a claim of double jeopardy *de novo*." *Pablo*, 2016 Guam 29 ¶ 20. "The denial of a pretrial motion to dismiss an indictment on double jeopardy . . . grounds is reviewed *de novo*." *People v. Angoco*, 2004 Guam 11 ¶ 7.

[16]    The U.S. Supreme Court has "consistently reiterated" that the "decision whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge." *Renico v. Lett*, 559 U.S. 766, 774 (2010) (quoting *Illinois v. Somerville*, 410 U.S. 458, 462 (1973));[4] *see also State v. Paige*, 607 A.2d 164, 174–75 (N.J. Super. Ct. App. Div. 1992) ("The trial court is vested with 'broad discretionary authority' to declare a mistrial due to a deadlocked jury and its decision to do so may

---

[3] Putting a defendant in jeopardy a second time is not necessarily harmless error—even if the defendant is acquitted on some charges at a second trial. *Brazzel v. Washington*, 491 F.3d 976, 978–79 (9th Cir. 2007). In other words, had we denied the petition but ultimately reached the double jeopardy issue on direct appeal, a third trial may have been required—even if Vargas were acquitted of the nine other charges the first jury did not reach.

[4] While *Renico v. Lett*, 559 U.S. 766 (2010), was a federal habeas corpus case, the Court clarified in a subsequent decision that these legal principles also apply to direct review. *See Blueford v. Arkansas*, 566 U.S. 599, 609 n.2 (2012).

be reversed only for an abuse of discretion." (quoting *State v. Roach*, 536 A.2d 282, 286 (N.J. Super. Ct. App. Div. 1987)).

[17]     "A judicial determination of manifest necessity is reviewed for abuse of discretion . . . ." *United States v. Chapman*, 524 F.3d 1073, 1082 (9th Cir. 2008) (citing *United States v. Bonas*, 344 F.3d 945, 948 (9th Cir. 2003)).

[18]     Whether an implied acquittal occurred, preventing retrial under the Double Jeopardy Clause, presents a constitutional question we review *de novo*. *Pablo*, 2016 Guam 29 ¶ 20.

## IV.  ANALYSIS

### A.  Retrial Under 9 GCA § 1.24(d)(2) Does Not Violate the Fifth Amendment

[19]     Vargas contends that the trial court declared a mistrial based on manifest necessity arising from a purported hung jury without first confirming that the jury was, in fact, deadlocked. *See* Appellant's Br. at 14 (June 9, 2025).  The People argue that "Vargas consented to the mistrial [and e]ven if Vargas did not consent to the mistrial, the trial court's determination of 'manifest necessity' was not an abuse of discretion because the jury was deadlocked and an *Allen* charge would have been coercive." Appellee's Br. at 5 (July 9, 2025).  Because we may affirm the trial court on any ground supported by the record, we affirm on the alternative ground that the termination of Vargas's previous trial was proper due to the "failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed." *See* 9 GCA § 1.24(d)(2).

[20]     Both the Double Jeopardy Clause of the U.S. Constitution and the Organic Act Bill of Rights prevent a person from being "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also* 48 U.S.C.A. § 1421b(d), (u).[5]  "The Double Jeopardy

---

[5] In our Order granting permission to appeal, we warned Vargas several times that his petition was inadequately briefed.  Order at 1–4 (Mar. 6, 2025).  Yet we granted the petition because it was not opposed by the People, and "[a]lthough not articulated" by Vargas, it raised several issues of first impression.  However, Vargas's

Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Pablo*, 2016 Guam 29 ¶ 23 (quoting *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982)). "However, the Clause does not 'guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding.'" *Id.* (quoting *Kennedy*, 456 U.S. at 672).

[21]     The Legislature has codified the prohibition against double jeopardy by statute. The applicable statute governing whether prosecution is barred by a prior prosecution for the same offense is 9 GCA § 1.24.[6] That provision states:

> A prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred by such former prosecution under the following circumstances:
>
> . . . .
>
> (d) The former prosecution was improperly terminated. Except as provided in this Subsection, there is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of fact. Termination under any of the following circumstances *is not improper*:
>
>> (1) the defendant consents to the termination or waives, by motion to dismiss or otherwise, his right to object to the termination;
>>
>> (2) the trial court finds that the termination is necessary because of the failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed; or
>>
>> (3) the trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity.

---

briefs have largely left those issues of first impression unaddressed. As such, we apply well-settled Fifth Amendment precedent to determine whether his retrial violates the floor set by the U.S. Constitution.

[6] Vargas does not allege that this statute provides less protection than the Double Jeopardy Clauses of the Fifth Amendment or Organic Act Bill of Rights. In fact, he does not engage with this statute at all, despite the People raising it. *Contrast* Appellee's Br. at 9–10, 14 (July 9, 2025), *with* Appellant's Reply Br. at 1–9 (July 25, 2025).

9 GCA § 1.24(d) (emphasis added). Subsection 1.24(d)(1) considers a defendant's consent to a mistrial, subsection 1.24(d)(2) addresses instances of a hung jury, and subsection 1.24(d)(3) covers instances of manifest necessity.

[22]     Under 9 GCA § 1.24, the government cannot re-prosecute a defendant "for a violation of the same provision of the statutes based upon the same facts as a former prosecution," including when "[t]he former prosecution was improperly terminated." However, the statute does not bar retrial where the termination of the previous trial was proper due to the "failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed." *See* 9 GCA § 1.24(d)(2).

[23]     "[I]t is a cardinal rule of statutory construction that courts must look first to the language of the statute itself. Absent clear legislative intent to the contrary, the plain meaning prevails." *People v. Cruz*, 2021 Guam 10 ¶ 12 (quoting *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 17). "If a statute is unambiguous, then the judicial inquiry into the meaning of the statute is complete." *Id.* (quoting *People v. Lau*, 2007 Guam 4 ¶ 14). "We make this determination based on the statute's language, the context in which it is used, and the broader context of the statute as a whole, including its object and policy." *People v. Walliby*, 2024 Guam 13 ¶ 10.

[24]     Title 9 GCA § 1.24(d)(2) is based in part on the Model Penal Code ("MPC"). 9 GCA § 1.24, SOURCE. The editors of the MPC note that the double jeopardy statutes were proposed before the U.S. Supreme Court held the Fifth Amendment was applicable to the states, but the provisions "are generally consistent with and in a number of instances now mandated by the Court's rulings." Model Penal Code § 1.07 explanatory note for sections 1.07–1.11 (A.L.I. 1985). Indeed, section 1.24(d)(2) is in line with the U.S. Supreme Court's precedent that a trial court's finding of a hung jury meets the standard of manifest necessity. *See Richardson v. United States*, 468 U.S. 317, 323–24 (1984) ("It has been established for 160 years, since the opinion of Justice

Story in *United States v. Perez*, 22 U.S. 579 (1824), that a failure of the jury to agree on a verdict was an instance of 'manifest necessity' which permitted a trial judge to terminate the first trial and retry the defendant, because 'the ends of public justice would otherwise be defeated.'"); *Kennedy*, 456 U.S. at 672 ("While other situations have been recognized by our cases as meeting the 'manifest necessity' standard, the hung jury remains the prototypical example."). The Court has "never 'overturned a trial court's declaration of a mistrial after a jury was unable to reach a verdict on the ground that the "manifest necessity" standard had not been met.'" *Renico*, 559 U.S. at 775 (quoting *Winston v. Moore*, 452 U.S. 944, 947 (1981) (Rehnquist, J., dissenting)). The Court has "never required a trial judge, before declaring a mistrial based on jury deadlock . . . to consult with (or obtain the consent of) either the prosecutor or defense counsel . . . or to consider any other means of breaking the impasse." *Id.* And, the Court has not held that a defendant's knowing, voluntary, and intelligent waiver is required to declare a mistrial. *United States v. Dinitz*, 424 U.S. 600, 609 n.11 (1976) (collecting cases).

[25]    Persuasive authority from other states that have adopted the MPC's double jeopardy provisions also supports our conclusion. In fact, New Jersey's codification of the MPC is listed as a source for 9 GCA § 1.24. 9 GCA § 1.24, SOURCE.[7] Subsections 1.24(d) and N.J. Stat. Ann. § 2C:1-9(d) are the same in all substantive respects. The Appellate Division of the Superior Court of New Jersey has explained that neither case law nor the double jeopardy statute "prohibit retrial following termination if defendant consents or waives the right to assert double jeopardy, or if the retrial is the necessary result of a hung jury, or when there is 'a sufficient legal reason and a manifest or absolute or overriding necessity.'" *State v. Love*, 660 A.2d 1246, 1250 (N.J. Super.

---

[7] The only difference between the current versions of 9 GCA § 1.24 and N.J. Stat. Ann. § 2C:1-9 is this additional clause in subsection (b) of the New Jersey version: "This subsection shall not apply to an order or judgment quashing an indictment prior to trial." *Contrast* 9 GCA § 1.24, *with* N.J. Stat. Ann. § 2C:1-9 (West).

Ct. App. Div. 1995) (per curiam) (quoting N.J.S.A. 2C:1-9(d)(2)).  The Appellate Division of the Superior Court of New Jersey has also upheld the decision of a trial court under 2C:1-9(d)(2) after it found the jury deadlocked and declared a mistrial, reasoning that "[t]he trial court is vested with 'broad discretionary authority' to declare a mistrial due to a deadlocked jury and its decision to do so may be reversed only for an abuse of discretion." *Paige*, 607 A.2d at 174–75 (citation omitted). Regarding what it means for a jury to be "deadlocked," the New Jersey Supreme Court has explained that, "[w]hen the 'difference of opinion between members of the jury is clearly intractable,' . . . then the jury is deadlocked and a mistrial should be declared." *State v. Ross*, 93 A.3d 739, 747 (N.J. 2014) (second alteration in original) (quoting *State v. Figueroa*, 919 A.2d 826, 837 (N.J. 2007)).[8]

[26]     The plain meaning of 9 GCA § 1.24(d)(2) unambiguously indicates that retrial is not barred in cases in which the termination of the previous trial was proper due to the instance of a hung jury, so long as the jury has had a reasonable time to deliberate.  *See* 9 GCA § 1.24(d)(2); *Cruz*, 2021 Guam 10 ¶ 12.

[27]     The U.S. Supreme Court has explained that "[t]he trial judge's decision to declare a mistrial when he considers the jury deadlocked is . . . accorded great deference by a reviewing court." *Renico*, 559 U.S. at 774 (alteration in original) (quoting *Arizona v. Washington*, 434 U.S. 497, 510 (1978)).  The Ninth Circuit has said that "[a] determination of manifest necessity may be upheld even if other reasonable trial judges might have proceeded with the trial despite the error."

---

[8] In *State v. Ross*, 93 A.3d 739 (N.J. 2014), the New Jersey Supreme Court explained:

> [A] footnote to the Model Criminal Jury Charge instructs trial judges, "[w]hen you feel a reasonable period of time has gone by subsequent to the delivery of your charge, be aware of N.J.S.A. 2C:1-9d(2)."  A sentence added to the footnote in 2013 informs the trial judge, but not the jury, that "[m]istrial for a jury unable to reach a verdict will not prevent retrial."

*Ross*, 93 A.3d at 747 n.3 (second and third alterations in original) (quoting Model Jury Charge (Criminal), "Judge's Instructions on Further Jury Deliberations" (Jan. 14, 2013); Notice to the Bar, Updates to Model Criminal Jury Charges, 211 N.J.L.J. 319 (Feb. 4, 2013)).

*Chapman*, 524 F.3d at 1082. When reviewing a determination of manifest necessity for abuse of discretion, we consider "whether it was 'one that a rational jurist could have made based on the record presented to him.'" *See id.* at 1083 (quoting *Bonas*, 344 F.3d at 948).

[28]   The jury deliberated for approximately thirteen hours across three days. The jury foreperson explained that they did not mark either the guilty or not guilty box on most of the forms because the jury was undecided on those counts. The foreperson acknowledged that the jury was hung on certain counts, and the trial court confirmed with the jury that no unanimous decision had been reached. Thus, the jury was deadlocked as contemplated by section 1.24(d)(2).

[29]   Vargas argues "the trial court made no findings of manifest necessity" and that "there was no manifest necessity for the court to quickly declare a hung jury on the remaining charges." Appellant's Br. at 14. But the U.S. Supreme Court has "explicitly held that a trial judge declaring a mistrial is not required to make explicit findings of 'manifest necessity' nor to 'articulate on the record all the factors which informed the deliberate exercise of his discretion.'" *Renico*, 559 U.S. at 775 (quoting *Washington*, 434 U.S. at 517). The Seventh Circuit has explained that "[a] trial court's failure to explicitly find manifest necessity or examine alternatives to a mistrial . . . does not render the ruling constitutionally defective so long as the record provides adequate justification for the trial court's ruling." *Camden v. Cir. Ct. of Second Jud. Cir.*, 892 F.2d 610, 614 (7th Cir. 1989) (citing *Washington*, 434 U.S. at 516–17). Because the jury foreperson stated that the jury was undecided and the jury collectively confirmed it was hung, Tr. at 2–3, 5 (Verdict), the trial court's declaration of a mistrial based on the hung jury is adequately justified by the record, *see id.* at 8.

[30]   Vargas also argues that if certain permissible acts had been "carefully executed," a mistrial could have been avoided. Appellant's Br. at 14. He claims the trial court "had never once

questioned the jurors on whether or not they could return to deliberations and reach a verdict if given more time and the opportunity to deliberate further." *Id.* (citing *Washington*, 434 U.S. 497). The People argue that the trial court was not required to do so and that an *Allen* charge[9] would have been unduly coercive because the court had seen the verdict forms. Appellee's Br. 16–19; *see also* Tr. at 4 (Verdict). Vargas replies that "the Prosecutor goaded the Court into declaring a mistrial" based on an "erroneous and misleading statement of law." Appellant's Reply Br. at 6 (July 25, 2025). Although declaring a mistrial was not necessarily the trial court's only option, the prosecution did not "goad" the trial court into declaring a mistrial. Rather, the trial court properly exercised its discretion when it found that requiring further deliberation would be coercive.

[31]     Although this is technically an issue of first impression in this court, generally the law is well settled on this issue. The U.S. Supreme Court has "never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse—let alone to consider giving the jury new options for a verdict." *Blueford v. Arkansas*, 566 U.S. 599, 609 (2012) (citing *Renico*, 559 U.S. at 775). Title 8 GCA § 105.24 provides in pertinent part:

> (b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations . . . . The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals and shall not inquire as to the division of the jury.

> (c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

8 GCA § 105.24 (2005). When a jury returns a partial verdict, the trial court may give an *Allen* charge if it is not unduly coercive. *See, e.g.*, *United States v. Williams*, 547 F.3d 1187, 1205 (9th

---

[9] An *Allen* charge is an instruction from the trial court "encouraging jurors to come to a definitive resolution." *Vargas I*, 2024 Guam 1 ¶ 18 n.4.

Cir. 2008); *Harris v. State*, 862 A.2d 516, 529 (Md. Ct. Spec. App. 2004). "The fact that the jury disclosed its exact numerical division has not, by itself, precluded the use of the *Allen* charge." *United States v. Seawell*, 550 F.2d 1159, 1162 n.7 (9th Cir. 1977). "It would, however, be reversible error for a trial judge to inquire into the numerical split of a jury before giving an *Allen* charge." *Id.* (citing *Brasfield v. United States*, 272 U.S. 448 (1926)). Additionally, even if the judge learns of the jury's division inadvertently, reversal is still necessary "if the holdout jurors could interpret the charge as directed specifically at them—that is, if the judge knew which jurors were the holdouts *and* each holdout juror knew that the judge knew he was a holdout." *United States v. Ajiboye*, 961 F.2d 892, 894 (9th Cir. 1992). But, the Ninth Circuit has not reversed "where the numerical division of the jury has been disclosed, but the votes of individual jurors has not." *Williams*, 547 F.3d at 1206.

[32]     While the trial court here reviewed the verdict forms, the forms did not reveal either the jury's numerical division or its individual votes. Reply Br. at 3 ("The judge had no information on any tally of votes on any particular charge."). The trial court strictly followed 8 GCA § 105.24. While the trial court was not required to give an *Allen* charge, *see Blueford*, 566 U.S. at 609, the court may have done so after reviewing the verdict forms—without inquiring into the numerical division of the jury or otherwise knowing about the individual votes of the jury—so long as the charge would not have been unduly coercive, *see Williams*, 547 F.3d at 1205–06. But that the court may have done so does not mean the court was required to use that particular means to attempt to break the impasse. *See Blueford*, 566 U.S. at 609.

[33]     Vargas cites *Oregon v. Kennedy*, 456 U.S. 667 (1982), for the proposition that the prosecutor "goaded" the trial court into declaring a mistrial. Reply Br. at 2–3. We have explained that "[a]s provided in *Kennedy*, the relevant inquiry is whether the conduct giving rise to the

mistrial in this case was *intended to provoke* a mistrial." *Pablo*, 2016 Guam 29 ¶ 28. But even assuming the prosecutor's legal arguments about coercion were incorrect, a prosecutor advancing an erroneous view alone is not sufficient to establish an intent to cause a mistrial.

[34]     The prosecutor argued that an *Allen* charge would have been unduly coercive because the court had seen the verdict forms. The trial court explained that "[t]he Court's knowledge of the two guilty verdicts intensified the coercive effect of a future *Allen* charge, and prevented the Court from issuing one to the jury." RA, tab 402 at 7 (Dec. & Order re Double Jeopardy) (citing *Brasfield*, 272 U.S. at 449–50). The trial court explained that under *Brasfield*, a court's knowledge about "how a jury is divided prevents further jury deliberations due to its coercive effect." *Id.*

[35]     The jury reported that it had reached verdicts on two counts and that it was unable to reach a decision on the remaining counts. The trial court explained, "Although the Court was not informed of how the jury was divided as to the remaining charges, its knowledge of the jury's unanimous guilty verdicts on Charge Two (Count Four) and its accompanying Vulnerable Victim Enhancement fit firmly into *Brasfield*." RA, tab 402 at 7 (Dec. & Order re Double Jeopardy). And "[p]ermitting further jury deliberation would incentivize a decision in line with the verdicts already revealed. This coercive effect prevented the Court from issuing an *Allen* charge or affording the jury more time to reach unanimous decisions on the remaining charges." *Id.*

[36]     Trial courts retain wide discretion in determining whether to give the jury an *Allen* charge. *See People v. Patrick*, 2016 Guam 2 ¶ 9 ("In deciding at what point further deliberations by a particular jury would be fruitless or unduly coercive, the trial judge has wide discretion." (quoting *United States v. Stevens*, 177 F.3d 579, 583 (6th Cir. 1999))). The verdict forms and the jury's confirmation that it was deadlocked provided a sufficient basis for the trial court's declaration of a mistrial. *See* 9 GCA § 1.24(d)(2). Vargas does not challenge the trial court's reliance on

*Brasfield* and has not otherwise shown that the prosecutor "goaded" the trial court into a mistrial. *See* Reply Br. at 2.

[37]     The trial court did not abuse its discretion when it concluded that the jury could not reach a unanimous verdict, after the foreperson and the jury said they could not. The trial court's determination that the hung jury warranted a mistrial was "one that a rational jurist could have made based on the record presented to him." *See Chapman*, 524 F.3d at 1083 (quoting *Bonas*, 344 F.3d at 948).

[38]     Because we affirm on alternative grounds, we do not separately review the trial court's analysis under subsection 1.24(d)(3) or its findings regarding Vargas's consent under subsection 1.24(d)(1).[10]  Instead, we conclude that subsection 1.24(d)(2) directly applies: the jury's inability to agree upon a verdict after approximately thirteen hours of deliberating provided an independent statutory basis to declare a mistrial. *See People v. Tedtaotao*, 2023 Guam 21 ¶ 32 ("An appellate court may affirm the judgment of a lower court on any ground supported by the record." (quoting *People v. San Nicolas*, 2001 Guam 4 ¶ 29)).

## B. There Was No Implied Acquittal Because the Deadlocked Jury Was Not Silent Regarding Charge One (Count Five)

[39]     Although Vargas asserts that the jury impliedly acquitted him on one of the counts, there appears to be confusion about which count is at issue. *See* Appellant's Br. at 18–22. Vargas

---

[10] The People make three additional arguments: (1) Appellate review should be barred based on the law of the case doctrine, claiming Vargas did not appeal the trial court's finding of "manifest necessity" in *Vargas I*; (2) Vargas waived any challenge to the finding of "manifest necessity" because he did not seek reconsideration of the trial court's initial order declaring a mistrial on those grounds; and (3) Vargas also waived his challenge by not appealing the judgment related to the dismissal of the charges. Appellee's Br. at 5–6. We reject each argument. First, the law of the case doctrine creates a presumption that prior rulings will be followed during litigation, but this presumption is flexible and depends on the circumstances; it is not absolute. *See People v. Gutierrez*, 2005 Guam 19 ¶ 40 n.7 (per curiam). Second, the People failed to properly brief this issue, as they did not cite any legal authority to support their position. *See* Guam R. App. P. 13(a)(9), (b) (requiring contentions in appellee's brief contain the reasons for them, with citations to supporting authorities). Third, we agree with Vargas that a challenge to the order dismissing charges without prejudice would not have been ripe for consideration in *Vargas I*. *See* Reply Br. at 1 (citing *People v. Gay*, 2007 Guam 11; *A.B. Won Pat Guam Int'l Airport Auth. v. Moylan*, 2004 Guam 1 (per curiam)).

continues to contend the jury impliedly acquitted him of Charge One (Count *Four*) when it convicted him of Charge Two (Count Four). *Id.* at 18–19; Reply Br. at 7–8. The People respond that any implied acquittal would concern Charge One (Count *Five*), not Count Four—a conclusion consistent with both the trial court's finding and this court's prior determination. *See* Appellee's Br. at 5, 19; RA, tab 404 at 5 (Dec. & Order re Implied Acquittal); Order at 3 n.3 (Mar. 6, 2025). Vargas does not challenge the trial court's or this court's gentle attempts to correct him. *See* Appellant's Br. at 18–22; RA, tab 404 at 5 (Dec. & Order re Implied Acquittal); Order at 3 n.3 (Mar. 6, 2025). We therefore apply his arguments to Charge One (Count Five), concluding there was no implied acquittal because the jury was not silent on that count.

[40]     This court has explained that "the doctrine of implied acquittal. . . . involves situations in which a jury is presented with both greater and lesser included offenses, and convicts on the lesser while remaining silent on the greater. The conviction on the lesser included offense is an 'implied acquittal' of the greater offense." *People v. Quinata*, 2010 Guam 17 ¶ 34; *see also Green v. United States*, 355 U.S. 184, 190 (1957) ("[Defendant] was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder."); *Price v. Georgia*, 398 U.S. 323, 329 (1970) ("[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge." (footnote omitted)).

[41]    "Jury silence can be construed as an acquittal and can therefore act to terminate jeopardy." *State v. Daniels*, 156 P.3d 905, 909 (Wash. 2007) (en banc) (citing *Green*, 355 U.S. at 188), *opinion adhered to on reconsideration*, 200 P.3d 711 (Wash. 2009) (mem.).  "[F]or over a century the United States Supreme Court has held that when a jury is unable to agree, jeopardy has not terminated." *Id.* at 909 (citing *Selvester v. United States*, 170 U.S. 262, 269 (1898)).  "[T]he failure of the jury to reach a verdict is not an event which terminates jeopardy. . . . The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree." *Richardson*, 468 U.S. at 325–26.

[42]    Under the Fifth Amendment, "when a jury deadlocks on a greater charge but convicts on a lesser-included charge, the hung-jury rule trumps the implied-acquittal rule, allowing retrial on the greater charge." *See Sayed v. Trani*, 732 F. App'x 691, 694 (10th Cir. 2018); *Selvester*, 170 U.S. at 269 ("Doubtless, where a jury, although convicting as to some, are silent as to other, counts in an indictment, and are discharged without the consent of the accused, . . . the effect of such discharge is 'equivalent to acquittal,' because, as the record affords no adequate legal cause for the discharge of the jury, any further attempt to prosecute would amount to a second jeopardy, as to the charge with reference to which the jury has been silent.  But such, obviously, is not the case where a jury have not been silent as to a particular count, but where, on the contrary, a disagreement is formally entered on the record.  The effect of such entry justifies the discharge of the jury, and therefore a subsequent prosecution for the offense as to which the jury has disagreed, and on account of which it has been regularly discharged, would not constitute second jeopardy."); *see also People v. Aguilar*, 2012 COA 181, ¶ 21 ("We conclude that when a jury deadlocks on a greater charge but convicts on a lesser included charge, the hung jury rule, and not the implied acquittal

doctrine, applies."). Although some states do not follow this rule on state law grounds, Vargas makes no such arguments. *See, e.g.*, *Hoover v. State*, 918 N.E.2d 724, 736 (Ind. Ct. App. 2009) ("[C]onviction on the lesser-included robbery offense constitutes an acquittal on the greater felony-murder charge, notwithstanding the jury's express deadlock.").

[43]    The trial court concluded that the implied acquittal doctrine was not implicated because CSC II is not a lesser-included offense of CSC I. *See* RA, tab 404 at 3–5 (Dec. & Order re Implied Acquittal). Although we ultimately affirm the trial court's denial of Vargas's motion to dismiss, whether there was an implied acquittal does not necessarily turn on whether CSC II is a lesser-included offense of CSC I. As the Ninth Circuit has explained, "for double jeopardy to attach, there is no explicit requirement that the charged offenses be greater and lesser included offenses. Rather, the U.S. Supreme Court is clear that a defendant may not be retried after an implied acquittal of *any* offense." *Brazzel v. Washington*, 491 F.3d 976, 982 (9th Cir. 2007) (citing *Green*, 355 U.S. at 191). And as highlighted by our recent decision in *People v. Castro*, 2025 Guam 9 ¶ 39, double jeopardy is implicated when charges of CSC I and II arise from the same underlying conduct. We find the dispositive question is not whether CSC II is an included offense of CSC I, but rather whether the jury was silent on Charge One (Count Five) when it convicted Vargas on Charge Two (Count Four).

[44]    The jury convicted Vargas on Charge Two (Count Four), which read:

> On or about the 26th day of July, 2018, in Guam, LOUIS ANTHONY VARGAS, did commit the offense of Second Degree Criminal Sexual Conduct (As a First Degree Felony), in that he intentionally engaged in sexual contact with another, to wit: touching the primary genital area of L.E.L., . . . , a minor under fourteen (14) years of age, in violation of 9 GCA §§ 25.20 (a)(1) and (b).

RA, tab 365 at 7 (Superseding Indictment, July 12, 2024) (emphases omitted). Vargas argues that there was an implied acquittal of Charge One (Count Four), which read:

> On or about the period between February 1, 2018 and July 22, 2018, inclusive, in Guam, LOUIS ANTHONY VARGAS, did commit the offense of First Degree Criminal Sexual Conduct (As a First Degree Felony), in that he intentionally engaged in sexual penetration with another, to wit: fellatio with L.E.L., . . . , a minor under fourteen (14) years of age, in violation of 9 GCA §§ 25.15 (a)(1) and (b).

*Id.* at 3–4 (emphases omitted). The People, the trial court, and this court have pointed out to defense counsel on multiple occasions that any argument regarding implied acquittal would concern Charge One (Count Five). *See* Appellee's Br. at 5, 19; RA, tab 404 at 2–3 (Dec. & Order re Implied Acquittal); Order at 3 n.3 (citing RA, tab 404 at 2–3 (Dec. & Order re Implied Acquittal)). Charge One (Count Five) read:

> On or about the 25th day of July, 2018, in Guam, LOUIS ANTHONY VARGAS, did commit the offense of First Degree Criminal Sexual Conduct (As a First Degree Felony), in that he intentionally engaged in sexual penetration with another, to wit: sexual intercourse with L.E.L., . . . , a minor under fourteen (14) years of age, in violation of 9 GCA §§ 25.15 (a)(1) and (b).

RA, tab 365 at 4 (Superseding Indictment) (emphases omitted). Yet defense counsel persists in his argument that there was an implied acquittal of Charge One (Count Four). *See* Reply Br. at 7.

[45]    Charge One (Count Four) refers to "On or about the period between February 1, 2018 and July 22, 2018, inclusive" and "sexual penetration with another, to wit: fellatio." RA, tab 365 at 3–4 (Superseding Indictment). Charge One (Count Five) refers to "On or about the 25th day of July, 2018" and "sexual penetration with another, to wit: sexual intercourse." *Id.* at 4. The trial court found Charge One (Count Four) inapplicable to Vargas's implied acquittal argument and applied Charge One (Count Five) instead. RA, tab 404 at 2–3 (Dec. & Order re Implied Acquittal). Vargas does not argue that the trial court erred in making this finding. Thus, we apply Vargas's arguments to Charge One (Count Five) in our analysis and again repeat the words of the trial court that "Charge One (Count Four) clearly does not involve the same conduct alleged in Charge Two (Count Four)." Order at 3 n.3 (citing RA, tab 404 at 2–3 (Dec. & Order re Implied Acquittal)).

[46]    The jury was not silent because it expressly stated it was deadlocked on Charge One (Count Five).  *See Richardson*, 468 U.S. at 325–26; *Selvester*, 170 U.S. at 269.  All twenty verdict forms instructed the jury to have the foreperson sign and date the form if the jury was "unable to decide." RA, tabs 234–53 at 1 (Verdict Forms 1–20, May 20, 2021).  For each count on which the jury was undecided, it followed this instruction.  *See id.* (excluding Verdict Forms 17 and 18).  For each verdict form that applied to a special allegation, the jury followed the instruction to skip that form and did not sign it.  *See id.* (excluding Verdict Form 18).

[47]    The jury's compliance with these specific instructions is significant because we presume that juries follow the instructions they are given.  *People v. Reyes*, 2020 Guam 33 ¶ 64.  The rebuttable presumption that juries follow instructions applies to written and oral instructions, including those instructions provided within verdict forms.  *See id.*; *see, e.g.*, *People v. Eisen*, 820 N.W.2d 229, 232 (Mich. Ct. App. 2012) ("The verdict form is treated as, essentially, part of the package of jury instructions."); *Utley v. Healy*, 663 N.E.2d 229, 236 (Ind. Ct. App. 1996) ("[T]he jury was instructed about the appropriate use of each verdict form.  It is presumed that the jury followed the instructions as given."); *see Richardson v. Marsh*, 481 U.S. 200, 211 ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.").

[48]    The record here provides ample evidence of juror disagreement.  *See Selvester*, 170 U.S. at 269.  Some courts have found adequate evidence of disagreement based on the verdict forms alone—which is less than the record before us presents.  For example, the Washington Supreme Court has held that blank verdict forms indicating that the jury was unable to agree provided evidence of disagreement to support a finding that the jury was hung.  *See Daniels*, 156 P.3d at

909 ("[T]he blank verdict forms indicate on their face that the jury was unable to agree. Because the jurors were unable to agree, we cannot consider them to have acquitted [defendant] of the greater charges. Thus, [defendant] has no acquittal operating to terminate jeopardy." (quoting *State v. Ervin*, 147 P.3d 567, 572 (Wash. 2006) (en banc))); *Ervin*, 147 P.3d at 572 (holding jury was not silent because they were instructed to leave verdict forms blank if they were unable to agree on verdict, thus blank verdict forms indicated on their face that jury was unable to agree). The jury here not only followed the "unable to decide" instruction on the verdict forms, but the foreperson stated the jury was undecided, and the trial court confirmed with the entire jury that it did not reach a unanimous decision after approximately thirteen hours of deliberation. This is hardly a case in which the jury remained silent on the greater charges without giving any indication of hopeless deadlock. *See Daniels*, 200 P.3d at 719 (Chambers, J., dissenting) ("An implied acquittal occurs when a jury returns a guilty verdict on a lesser included or lesser alternative charge but remains silent on the greater charges *without announcing any sign of hopeless deadlock*." (emphasis added)).[11]

[49] The jury here was undecided, and the trial court formally entered evidence of disagreement on the record—there were multiple signs of hopeless deadlock. *See Selvester*, 170 U.S. at 269; *Brazzel*, 491 F.3d at 981. Under well-settled Fifth Amendment precedent, the hung-jury rule trumps the implied-acquittal rule. Accordingly, Vargas's retrial on Charge One (Count Five) is not barred by the Fifth Amendment. *See Brazzel*, 491 F.3d at 981.

---

[11] We note that although these Washington cases provide an illustrative example, we do not adopt their approach to jury silence. Indeed, the original author of the *Daniels* opinion dissented from his own opinion on reconsideration, *State v. Daniels*, 200 P.3d 711, 712 (Wash. 2009) (Sanders, J., dissenting), and another dissenting justice lamented that their court had "been tossed adrift in a sea of indecision over double jeopardy when faced with a jury's silence on a charge," *id.* at 717 (Chambers, J., dissenting). We believe the Ninth Circuit has the better view of the Double Jeopardy Clause. *See Brazzel*, 491 F.3d at 981 (overturning Washington State conviction on federal habeas review because retrial under *Ervin* violated Fifth Amendment).

## V.  CONCLUSION

[50]    Because we may affirm the judgment of the trial court on any ground supported by the record, *see Tedtaotao*, 2023 Guam 21 ¶ 32, we affirm the denial of both of Vargas's motions to dismiss on alternative grounds.  We **AFFIRM** the trial court's Double Jeopardy decision under 9 GCA § 1.24(d)(2) because the jury failed to agree upon a verdict after deliberating for approximately thirteen hours—a reasonable time for deliberation.  We also **AFFIRM** the trial court's implied acquittal decision on alternative grounds.  Vargas's retrial on Charge One (Count Five) is not barred by the Double Jeopardy Clause because the jury was not silent; it was deadlocked, and the trial court formally entered evidence of disagreement on the record.  *See Richardson*, 468 U.S. at 325–26; *Selvester*, 170 U.S. at 269; *Brazzel*, 491 F.3d at 981.  We **REMAND** for further proceedings not inconsistent with this opinion.


/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
ROBERT J. TORRES
Associate Justice


/s/
KATHERINE A. MARAMAN
Chief Justice